**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSHUA ANDREW SOTO,<br><br>        Petitioner,<br><br>    v.<br><br><br>R.T.C. GROUNDS, Warden,<br><br>        Respondent. | Case No. 1:13-cv-02097-AWI-BAM-HC<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT RESPONDENT'S MOTION TO DISMISS THE FIRST AMENDED PETITION (DOC. 11), DISMISS THE FIRST AMENDED PETITION WITH PREJUDICE AS UNTIMELY FILED (DOC. 8), ENTER JUDGMENT FOR RESPONDENT, AND DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY<br><br>**OBJECTIONS DEADLINE:**<br>**THIRTY (30) DAYS AFTER SERVICE** |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a first amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 through 304.  Pending before the Court is Respondent's motion to dismiss the first amended petition (FAP) as untimely filed and for Petitioner's failure to exhaust state court remedies, which was filed on March 4, 2014.  Petitioner filed opposition on July 10, 2014, and Respondent filed a reply with leave of Court on July 30, 2014.

1

I.   Proceeding by a Motion to Dismiss

Respondent has filed a motion to dismiss the petition on the ground that Petitioner filed his petition outside of the one-year limitation period provided for by 28 U.S.C. § 2244(d)(1).[1]

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules) allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court...."

The Ninth Circuit has allowed respondents to file motions to dismiss pursuant to Rule 4 instead of answers if the motion to dismiss attacks the pleadings by claiming that the petitioner has failed to exhaust state remedies or has violated the state's procedural rules.  See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate a motion to dismiss a petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 to review a motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D.Cal. 1982) (same).  Thus, a respondent may file a motion to dismiss after the Court orders the respondent to respond, and the Court should use Rule 4 standards to review a motion to dismiss filed before a formal answer.  See, Hillery, 533 F. Supp. at 1194 & n.12.

In this case, Respondent's motion to dismiss addresses the untimeliness of the petition pursuant to 28 U.S.C. § 2244(d)(1).

---

[1] Because the Court concludes that the petition should be dismissed with prejudice because it was untimely filed, the Court has not considered Respondent's additional contention concerning Petitioner's failure to exhaust state court remedies.

The facts pertinent to the motion are found in state records that have been provided by the parties and which present no material factual dispute.

Because Respondent has not filed a formal answer, and because Respondent's motion to dismiss is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default, the Court will review Respondent's motion to dismiss pursuant to its authority under Habeas Rule 4.

II.  Procedural Summary

On April 23, 2008, Petitioner was convicted in the Superior Court of the State of California, County of Kings (KCSC) of conspiracy to commit robbery, attempted robbery, assault with a firearm, resisting a peace officer, misdemeanor hit and run, and assault by means of force likely to produce great bodily injury. The jury found that each count was committed for the benefit of a criminal street gang and that Petitioner had suffered two prior prison terms.  Petitioner was sentenced to a determinate state prison term of twenty-nine years.  (LD 1, LD 2 at 2-3.)[2]  However, in March 2010, the Court of Appeal of the State of California, Fifth Appellate District (CCA) affirmed the judgment on appeal but vacated the sentence and remanded the matter for resentencing.  (LD 2 at 2-3.)  The California Supreme Court (CSC) denied review on June 30, 2010 (LD 3-4), and the United States Supreme Court denied a petition for writ of certiorari on November 15, 2010 (LD 5).

On October 14, 2010, Petitioner was resentenced pursuant to the direction of the CCA. (LD 6.)

Petitioner subsequently filed two pro se state post-conviction

_____

[2] "LD" refers to documents lodged in connection with the motion to dismiss.

3

collateral challenges with respect to the pertinent judgment or claim:

The First Petition:

March 14, 2011: petition for writ of habeas corpus filed in the KCSC (LD 7);

June 6, 2011: petition denied (LD 8);

The Second Petition:

November 1, 2011: petition for writ of habeas corpus filed in the CCA (LD 9);

May 24, 2012: petition denied (LD 10).

Petitioner constructively filed the initial petition in this proceeding on December 5, 2013, challenging his convictions. (Doc. 1, doc. 1-2 at 12.)[3]   The first amended petition was filed on January 16, 2014.  (Doc. 8.)

III.  Summary of the Circumstances pertinent to Timeliness

Petitioner alleges that after his transfer to Kern Valley State Prison (KVSP) on November 15, 2010, and after KVSP failed to satisfy

---

[3] Dates of filing are calculated pursuant to the "mailbox rule."  Habeas Rule 3(d) provides that a paper filed by a prisoner is timely if deposited in the institution's internal mailing system on or before the last day for filing.  The rule requires the inmate to use the custodial institution's system designed for legal mail; further, timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement setting forth the date of deposit and verifying prepayment of first-class postage.  Id.  Habeas Rule 3(d) reflects the "mailbox rule," initially developed in case law, pursuant to which a prisoner's pro se habeas petition is "deemed filed when he hands it over to prison authorities for mailing to the relevant court."  Houston v. Lack, 487 U.S. 266, 276 (1988); Huizar v. Carey, 273 F.3d 1220, 1222 (9th Cir. 2001).  The mailbox rule applies to federal and state petitions alike.  Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010) (citing Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th. Cir. 2003), and Smith v. Ratelle, 323 F.3d 813, 816 n.2 (9th Cir. 2003)).  The mailbox rule, liberally applied, in effect assumes that absent evidence to the contrary, a legal document is filed on the date it was delivered to prison authorities, and a petition was delivered on the day it was signed.  Houston v. Lack, 487 U.S. at 275-76; Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010); Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010); Lewis v. Mitchell, 173 F.Supp.2d 1057, 1058 n.1 (C.D.Cal. 2001).

4

many unspecified requests, Petitioner finally was permitted access to the prison law library once a week in October 2012, when his year to file a federal habeas petition was up.  It is generally alleged, without specification or supporting documentation, that paging requests were not answered, and neither staff nor inmates knew how to use a computer.  Petitioner attributes the obstruction of his access to the law library to what he characterizes as illegal segregation of northern Hispanic prisoners, who were not allowed to visit the KVSP library before October 25, 2012.  He did not know about extraordinary circumstances until he reached Salinas Valley State Prison, and it was still difficult to access the law library without a deadline that would support priority legal user status. (Doc. 20, 1-3.)

Documentation attached to his opposition reflects that in September 2011, Petitioner requested from the law library a form for a federal habeas corpus petition; he indicated that his statute of limitations was running out.  (Doc. 20, 20.)  On November 3, 2011, Petitioner requested access to the law library, stating that he had been ducated only twice but had not been allowed to go since November 2010 because he was classified as a Northern Hispanic, and he had not received a requested habeas form.  (Id. at 21.)

On March 26, 2012, Petitioner stated that although he had been ducated for law library access several times, he had not had sufficient law library access to meet his deadlines, and he had to rely on Black inmates to acquire forms and copies.  (Id. at 24.)  On September 19 and 28 and October 29, 2012, Petitioner requested law library access again.  (Id. at 22-23, 25.)  On October 16, 2012, Petitioner initiated a complaint about access and hours of access to

5

the prison law library that was returned for formal and substantive defects but was ultimately granted in part at the first level of appellate review.   In the course of the administrative process, Petitioner alleged that he was not allowed on the computer or that he had had access once but staff did not know how to operate it; paging had never been available; and he could not actually physically go to the law library until October 25, 2012, which was confirmed by librarian Martinez.   (Id. at 13-19.)   In granting Petitioner's request for law library access at the first appellate level, the prison administration indicated that the reason for the lack of an opportunity for physical access to the law library for Northern Hispanic inmates was security; however, paging services had been available during the time that actual physical access was restricted; beginning October 2012, the Northern Hispanic inmates were scheduled for law library once a week, and Petitioner had visited the law library on November 1 and 8, 2012.

Documentation also establishes that Petitioner had a reading level below 4.0.   (Id. at 14-15.)

IV.   <u>Timeliness of the Petition</u>

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies to the petition.   <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997).

The AEDPA provides a one-year period of limitation in which a petitioner must file a petition for writ of habeas corpus.   28 U.S.C. § 2244(d)(1).   As amended, subdivision (d) reads:

(1) A 1-year period of limitation shall apply to an

6

application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

     A.   Commencement and Running of the Limitation Period

Under § 2244(d)(1)(A), the "judgment" refers to the sentence imposed on the petitioner. Burton v. Stewart, 549 U.S. 147, 156-57 (2007). The last sentence was imposed on Petitioner on October 14, 2010, when the KCSC resentenced Petitioner.

Under § 2244(d)(1)(A), a judgment becomes final either upon the conclusion of direct review or the expiration of the time for seeking such review in the highest court from which review could be sought. Wixom v. Washington, 264 F.3d 894, 897 (9th Cir. 2001).

7

1  Here, Petitioner filed no direct appeal from the resentencing.  The

2  judgment became final pursuant to governing California law sixty

3  days later on December 13, 2010, pursuant to Cal. Rules of Court,

4  Rule 8.308.[4]  The judgment thus became final then because the time

5  for seeking state court review expired.  Cf. Gonzalez v. Thaler, -

6  U.S. -, 132 S.Ct. 641, 653-54 (2012).

7       Therefore, the limitation period began to run on the following

8  day, December 14, 2010.  Absent any grounds for tolling or an

9  exception to the statute, the limitation period concluded one year

10  later on December 13, 2011.

11          B.  Statutory Tolling

12       It must be determined whether Petitioner is entitled to

13  statutory tolling of the limitation period.

14            1.  Pendency of State Habeas Petitions

15       Title 28 U.S.C. § 2244(d)(2) states that the "time during which

16  a properly filed application for State post-conviction or other

17  collateral review with respect to the pertinent judgment or claim is

18  pending shall not be counted toward" the one-year limitation period.

19  28 U.S.C. § 2244(d)(2).

20       An application for collateral review is "pending" in state court

21  "as long as the ordinary state collateral review process is 'in

22  continuance'--i.e., 'until the completion of' that process." Carey v.

23  Saffold, 536 U.S. 214, 219-20 (2002).  In California, this generally

24  means that the statute of limitations is tolled from the time the

25  first state habeas petition is filed until the California Supreme

26  _____

27  [4] Cal. Rules of Court, Rule 8.308(a) provides, "Except as... otherwise provided by
law, a notice of appeal and any statement required by Penal Code section 1237.5

28  must be filed within 60 days after the rendition of the judgment or the making of
the order being appealed.

8

Court rejects the petitioner's final collateral challenge, as long as the petitioner did not "unreasonably delay" in seeking review. Id. at 221-23; accord, Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).  Thus, absent unreasonable delay, the statute is tolled during the gaps between denial of a petition and the filing of the next petition in a higher state court because the collateral review process is deemed "pending" within the meaning of § 2244)(d)(2).  However, the statute of limitations is not tolled from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed because there is no case "pending" during that interval.  Nino v. Galaza, 183 F.3d at 1006; see, Lawrence v. Florida, 549 U.S. 327, 330-33 (2007) (holding that the time period after a state court's denial of state post-conviction relief and while a petition for certiorari is pending in the United States Supreme Court is not tolled because no application for state post-conviction or other state collateral review is pending).

Here, the limitation period commenced on December 14, 2010. The statute ran for ninety days until the first state petition was filed in the KCSC on March 14, 2011, which initiated an eighty-five-day period of tolling that endured until the denial of the petition on June 6, 2011.

Respondent contends that Petitioner is not entitled to statutory "gap" tolling between the KCSC's denial on June 6, 2011, and the filing of the second state petition in the CCA on November 1, 2011, because the delay of 148 days was unreasonable.

Absent a clear direction or explanation from the California Supreme Court about the meaning of the term "reasonable time" in

9

a specific factual context, or a clear indication that a filing was timely or untimely, a federal court hearing a subsequent federal habeas petition must examine all relevant circumstances concerning the delay in each case and determine independently whether the California courts would have considered any delay reasonable so as to render the state collateral review petition "pending" within the meaning of § 2244(d)(2).  Evans v. Chavis, 546 U.S. 189, 197-98 (2006).

A delay of six months has been found to be unreasonable because it is longer than the relatively short periods of thirty or sixty days provided by most states for filing appeals.  Evans v. Chavis, 546 U.S. at 201.  In this circuit, a period of thirty to sixty days is applied as a benchmark for California's "reasonable time" requirement, to be exceeded in appropriate circumstances.  Stewart v. Cate, 734 F.3d 995, 1001 (9th Cir. 2013) (citing Velasquez v. Kirkland, 639 F.3d 964, 968 (9th Cir. 2011)).  Various periods of delay have been found to be unreasonable, including intervals of eighty-one (81) and ninety-two (92) days between the disposition of a writ at one level and the filing of the next writ at a higher level, Velasquez v. Kirkland, 639 F.3d 964, 968 (9th Cir. 2011), cert. den., 132 S.Ct. 554 (2011); unexplained, unjustified periods of ninety-seven (97) and seventy-one (71) days, Culver v. Director of Corrections, 450 F.Supp.2d 1135, 1140 (C.D.Cal. 2006); one hundred (100) days between the denial of a petition by the California Court of Appeal and the filing of a petition in the California Supreme Court, which was held to be unreasonable because there was no showing of good cause for the delay where the two petitions involved the same claims, evidence, and research, and the

petitioner had at least thirty days to file the petition despite being under prisoner emergency status and being unable to research his petition, Stewart v. Cate, 734 F.3d at 1002-03; unjustified delays of one hundred fifteen (115) and one hundred one (101) days between denial of one petition and the filing of a subsequent petition, Chaffer v. Prosper, 592 F.3d. 1046, 1048 (9th Cir. 2010); and one hundred forty-six (146) days between the filing of two trial court petitions, Banjo v. Ayers, 614 F.3d 964, 968-69 (9th Cir. 2010), cert. den., 131 S.Ct. 3023 (2011).

Here, the CCA summarily denied the petition "without prejudice" and did not expressly determine that the petition was timely or untimely. (LD 10.) This Court thus proceeds to examine all relevant circumstances concerning the delay and to determine independently whether the California courts would have considered any delay reasonable.

The delay of 148 days was a substantial delay that would be unreasonable if unsupported by a showing of good cause. To benefit from statutory tolling, a petitioner must adequately justify a substantial delay. 28 U.S.C. § 2244(d)(2); Evans v. Chavis, 546 U.S. at 192-93; Waldrip v. Hall, 548 F.3d at 734.

In In re Reno, 55 Cal.4th 428, 460-61 (2012), the California Supreme Court summarized the applicable California law as follows:

> Our rules establish a three-level analysis for assessing whether claims in a petition for a writ of habeas corpus have been timely filed. First, a claim must be presented without substantial delay. Second, if a petitioner raises a claim after a substantial delay, we will nevertheless consider it on its merits if the petitioner can demonstrate good cause for the delay.

11

Third, we will consider the merits of a claim presented after a substantial delay without good cause if it falls under one of four narrow exceptions: "(i) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (ii) that the petitioner is actually innocent of the crime or crimes of which he or she was convicted; (iii) that the death penalty was imposed by a sentencing authority that had such a grossly misleading profile of the petitioner before it that, absent the trial error or omission, no reasonable judge or jury would have imposed a sentence of death; or (iv) that the petitioner was convicted or sentenced under an invalid statute." (*In re Robbins, supra*, 18 Cal.4th at pp. 780–781, 77 Cal.Rptr.2d 153, 959 P.2d 311.) The petitioner bears the burden to plead and then prove all of the relevant allegations. (Ibid.)

The United States Supreme Court recently, and accurately, described the law applicable to habeas corpus petitions in California: "While most States set determinate time limits for collateral relief applications, in California, neither statute nor rule of court does so. Instead, California courts 'appl[y] a general "reasonableness" standard' to judge whether a habeas petition is timely filed. *Carey v. Saffold*, 536 U.S. 214, 222 [122 S.Ct. 2134, 153 L.Ed.2d 260] (2002). The basic instruction provided by the California Supreme Court is simply that 'a [habeas] petition should be filed as promptly as the circumstances allow....'" (*Walker v. Martin, supra*, 562 U.S. at p. ----, 131 S.Ct. at p. 1125.) "A prisoner must seek habeas relief without 'substantial delay,' [citations], as 'measured from the time the petitioner or counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim,' [citation]." (Ibid.; see also *In re Robbins, supra*, 18 Cal.4th at p. 780, 77 Cal.Rptr.2d 153, 959 P.2d 311 ["Substantial delay is measured from the time the petitioner or his or her counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim."].)

In re Reno, 55 Cal.4th at 460-61.  A petitioner must show particular circumstances, based on allegations of specific facts,

sufficient to justify the delay; allegations made in general terms are insufficient.  In re Robbins, 18 Cal.4th at 787-88, 805 (1998) (citing In re Walker, 10 Cal.3d 764, 774 (1974)).  The Ninth Circuit Court of Appeals has noted that there are no California standards for determining what period of time or factors constitute "substantial delay" in noncapital cases or for determining what factors justify any particular length of delay.  King v. LaMarque, 464 F.3d 963, 966 (9th Cir. 2006).  Nonetheless, California's time limit for filing a habeas petition in a noncapital case is more "forgiving and flexible than that employed by most states."  Chavis, 546 U.S. at 202 (Stevens, J., concurring).

Here, with respect to Petitioner's delay from June 6, 2011, through November 1, 2011, in filing his second state petition, the documentation reflects that Petitioner requested a federal habeas form in September 2011, but it is not clear whether he received the form from any source.  Although physical access to the law library was foreclosed, there is no specification or documentation of other efforts during that time to seek alternative legal resources for the purpose of exhausting state court remedies.  However, Petitioner was able to file a habeas petition in the trial court in March 2011 that raised essentially the same factual and legal bases that were the subject of the later petition filed in the CCA.  (LD 7, LD 9.) Petitioner has not shown that during the pertinent time he diligently sought access to legal resources or that a lack of access explained or justified his delay.

Accordingly, the Court concludes that the running of the statute of limitations was not tolled between June 6, 2011, and November 1, 2011.  Accordingly, 148 days of the statute ran during

that period of time.

The statute was tolled from the filing of the second petition in the CCA on November 1, 2011, until its denial on May 24, 2012, for a total of 206 days.  The statute of limitations ran for 127 more days through September 28, 2012.  Thus, the constructive filing of his petition here on December 5, 2013, was untimely absent an additional basis of statutory tolling, equitable tolling, or an exception to the statute of limitations.

## 2.  State-Created Impediment

Respondent interprets Petitioner's opposition as a claim that Petitioner suffered a state-created impediment to filing within the meaning of 28 U.S.C. § 2244(d)(1)(B).  It is also possible that Petitioner is claiming relief from the statute based on equitable tolling, which provides for tolling of the statute if extraordinary circumstances prevent the filing of a timely federal petition. Respondent did not address equitable tolling.  In an abundance of caution, the Court will address both bases of relief from the statute.

Title 28 U.S.C. § 2244(d)(1)(B) provides that the statute of limitations shall run from the latest of:

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action.

28 U.S.C. § 2244(d)(1)(B).

In Ramirez v. Yates, 571 F.3d 995 (9th Cir. 2009), the court rejected a claim that the petitioner had suffered a state-created impediment to filing based on administrative segregation that

14

limited the prisoner's access to the law library and a copy machine. The court reasoned that there was no basis for statutory tolling due to a state-created impediment pursuant to § 2244(d)(1)(B) based on the prisoner's placement in administrative segregation and associated limitations on access to the law library and his legal files.  The Court held that the claim under § 2244(d)(1)(B) had to satisfy a higher bar than that for equitable tolling.  The court stated:

> He may be entitled to equitable tolling during the period he was without his legal materials if the deprivation of his legal materials made it impossible for him to file a timely § 2254 petition in federal court.  There is no constitutional right to file a timely § 2254 petition, however--Ramirez is entitled to the commencement of a new limitations period under § 2244(d)(1)(B) only if his placement in administrative segregation altogether prevented him from presenting his claims in any form, to any court. See generally Lewis, 518 U.S. at 350-51, 116 S.Ct. 2174.

Ramirez v. Yates, 571 F.3d at 1000-1001.  The court concluded that the petitioner could not make the required showing because during the requisite period, he filed three state petitions presenting his constitutional claims in various forms to competent state courts as well as an extensive and well-researched motion in federal court requesting that the AEDPA's limitations period be tolled and a successful discovery motion in the California Superior Court. Accordingly, the restriction on access to the law library and copier did not deny the petitioner his constitutional right of access to the courts.

The holding of <u>Ramirez v. Yates</u> is consistent with the decisions of the United States Supreme Court, which recognize that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.  <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977).  However, there is no abstract, freestanding constitutional right to have access to a law library or legal assistance unfettered from the right of meaningful access to the courts.  One constitutionally acceptable method of insuring meaningful access is to make law library facilities available to inmates, but such a method does not foreclose alternative means to achieve the goal of access.  <u>Lewis v. Casey</u>, 518 U.S. 343, 350-51 (1996).  The right of meaningful access to the courts prohibits state officials from actively interfering with an inmate's attempt to prepare or file legal documents.  <u>Lewis v. Casey</u>, 518 U.S. at 350.  The right requires a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.  <u>Id.</u> at 351.  However, a state is not required to enable a prisoner to discover grievances and to litigate effectively once he is in court; rather, inmates must be provided the tools they need in order to bring to the courts direct or collateral attacks upon their sentences, and challenges to their conditions of confinement.  <u>Id.</u> at 354-55.

Here, Petitioner twice requested to use the law library and once requested a form during the running of the statutory period. Even assuming that these attempts were totally unsuccessful, the nature and extent of Petitioner's efforts does not support a

16

conclusion that Petitioner's filing was impeded.  This is particularly so in light of Petitioner's having filed two state court petitions that raised essentially the same grounds. Petitioner has not made a specific and legally sufficient showing of a violation of his right of access to the courts or other violation of the Constitution.  Petitioner has not shown entitlement to statutory tolling pursuant to 28 U.S.C. § 2244(d)(1)(B).

### C.  Equitable Tolling

The one-year limitation period of § 2244 is subject to equitable tolling where the petitioner shows that he or she has been diligent, and extraordinary circumstances have prevented the petitioner from filing a timely petition.  Holland v. Florida, – U.S. –, 130 S.Ct. 2549, 2560, 2562 (2010).  Petitioner bears the burden of showing the requisite extraordinary circumstances and diligence.  Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th Cir. 2010). A petitioner must provide specific facts regarding what was done to pursue the petitioner's claims to demonstrate that equitable tolling is warranted.  Roy v. Lampert, 465 F.3d 964, 973 (9th Cir. 2006). Conclusional allegations are generally inadequate.  Williams v. Dexter, 649 F.Supp.2d 1055, 1061-62 (C.D.Cal. 2009).  Cases suggest that the untimeliness must result from an external force and not mere oversight, miscalculation, or negligence on the petitioner's part.  See Velasquez v. Kirkland, 639 F.3d 964, 969 (9th Cir. 2011); Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009).

The petitioner must show that the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time. Ramirez v. Yates, 571 F.3d at 997.  Where a prisoner fails to show

any causal connection between the grounds upon which he asserts a right to equitable tolling and his inability to file a timely federal habeas application, the equitable tolling claim will be denied.  Gaston v. Palmer, 417 F.3d 1030, 1034-35 (9th Cir. 2005).  Where there are multiple extraordinary circumstances alleged to have prevented a prisoner from filing a timely petition, the petitioner need not show that each circumstance independently prevented a timely filing; rather, it is sufficient to show that the two circumstances together rendered a timely filing impossible.  Ramirez v. Yates, 571 F.3d at 1000.

Petitioner's pro se status is not an extraordinary circumstance.  Chaffer v. Prosper, 592 U.S. 1046, 1049 (9th Cir. 2010).  A pro se petitioner's confusion or ignorance of the law is not alone a circumstance warranting equitable tolling.  Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006).

Likewise, limitations on law library access and research materials are not extraordinary, but rather are normal conditions of prison life.  Chaffer v. Prosper, 592 F.3d at 1049.

Here, Petitioner makes conclusional allegations that he repeatedly sought access to the law library, but the record shows only minimal and sporadic attempts.  Likewise, Petitioner's allegations concerning his lack of success with other efforts are conclusional.  It appears that Petitioner relied in some respects on other inmates, but Petitioner does not address any specific efforts or give any details concerning the success or failure of that route to information.  Although there is a general statement that paging was not available, this is contradicted by the administrative record, which reflects that the prison authorities addressed

Petitioner's grievance and indicated that paging had been available during the period that actual law library access was limited. Further, there is no documentation of any specific attempt on the part of Petitioner to use the paging service or any basis for a conclusion that paging would have been inadequate.  There is no specification of attempts to use the computer available to Petitioner in his housing unit.  This is not a situation where the record documents a petitioner's diligent efforts to obtain law library access or legal resources through alternate channels.

Further, Petitioner has not shown how the absence of access to the law library prevented him from filing a timely federal petition or delayed him in the exhaustion of state court remedies. Petitioner's last state petition raised numerous issues including inaccurate gang expert testimony; ineffective assistance of trial counsel for failing to communicate regarding deals and sentences as well as omitting to investigate and present alibi witnesses and permit Petitioner to hear the tape of the defense interview of the victim; newly discovered evidence that the persons who helped the victim were both documented members of Petitioner's gang; and prosecutorial misconduct in the form of referring to Petitioner's failure to take the stand and erroneously stating that the evidence showed that Petitioner was the perpetrator with the firearm.  (LD 9.)  These grounds were essentially the same as those stated in the previous state petition.  (LD 7.)  Likewise, Petitioner's federal petition did not expand his earlier grounds.  Further, during the very period during which the statute was running and Petitioner now claims inability to visit the law library excused his delay, Petitioner has not shown that he diligently pursued available

channels for obtaining materials by either use of the library or by alternate means such as paging or use of the computer or other inmates.  Petitioner has not shown with particularity that any extraordinary circumstances were the cause of his delay.

The present case is analogous with Ramirez v. Yates, 571 F.3d 995, where the court rejected a claim of entitlement to equitable tolling based on administrative segregation that limited the prisoner's access to the law library and a copy machine because security restrictions were common circumstances in prison that did not render filing impossible, and further because during the pertinent time the petitioner had been able to file motions in two courts.  Id. at 998.

Petitioner's request for an evidentiary hearing on the matter of equitable tolling due to a failure of law library access is likewise foreclosed by the absence of a causal link between Petitioner's conditions of confinement and delay in filing his claims.  Compare Lott v. Mueller, 304 F.3d 918, 925-26 (9th Cir. 2002) (remanding for further proceedings where "Lott's allegations, if uncontroverted, require an application of equitable tolling").

Accordingly, the Court concludes that Petitioner's claim of equitable tolling should be denied.

C.  <u>Actual Innocence</u>

In his opposition, Petitioner argues that newly discovered evidence demonstrates that he is innocent.  Petitioner points to new evidence that undercuts his convictions.

1.  <u>Evidence Relied on by Petitioner</u>

At trial, Petitioner was identified as a person wearing a white tank top who held the victim down during an attack by multiple

persons.  (FAP, doc. 8 at 11.)  Before trial, Petitioner did not
know the identity of someone who was vaguely identified in a report
as "Chaos," a good Samaritan who had facilitated the victim's being
taken to the hospital after the attack.  Petitioner's counsel and
investigator failed to follow up on the matter.  After his trial,
Petitioner was told by Tomas Jacob Aguilar that Aguilar was the
person named "Chaos" who had flagged down a friend, Renee Anthony
Moya, and had asked Moya to take the victim to the hospital.
Petitioner argues that because Petitioner, Aguilar, and Moya were
all identified by gang experts as members of the Lemoore Brown Pride
Norteno Gang, this evidence would contradict the testimony of gang
experts regarding gang motivation and participation.  Further, the
victim never identified his attackers as actual Nortenos, as
distinct from associates of Nortenos.  Petitioner contends that this
evidence shows that Petitioner is innocent of the gang allegations.
(Id. at 4-6.)

     A copy of the police report regarding the offenses indicates
that the victim reported that after the attack he encountered a
person known only to him as "Chaos" from Kettleman City, who in turn
had a friend take the victim to the hospital.  (Doc. 20, 26-27.)  A
declaration of Thomas Aguilar dated May 5, 2008, indicates that
after Aguilar had smoked marijuana with the victim and the victim
had departed, Aguilar later encountered the victim, who in a
bloodied condition said he was not sure what happened but it was
people who looked like Scraps; Aguilar then waved down Moya and had
him take the victim to the hospital.  (Id. at 35.)  An affidavit of
Renee Mora dated June 7, 2014, indicates that on August 13 at about
1:00 a.m., he and his companion, Rocio Arias, were flagged down by

21

his friend, Anthony Aguilar, and in response to Aguilar's request took the victim to the emergency room.  (Doc. 20, 30.)  A declaration of Petitioner's substitute counsel indicates that she presented the witnesses she believed were helpful at the new trial motion; although she did not recall the data regarding Chaos, she believed that establishing the gang affiliation of Chaos and his friend would have undercut the victim's post-offense statement made when Chaos and his friend encountered the victim right after the attack.  When asked what had happened, the victim told them that he had been attacked by some "Scraps," a derogatory term for Surenos. Thus, the victim's statement tended to impeach the victim's trial testimony that Petitioner and other Nortenos were the perpetrators. Establishing that Chaos and his companion were Nortenos would have provided a motive for the victim to identify his attackers incorrectly as Surenos in order to protect himself during his conversation with Norteno gang members.  (<u>Id.</u> at 28-29.)

Petitioner alleges that there was a tape of an interview apparently conducted by the defense investigator with the victim, Sebastian Gonzales, in which Gonzales represented that he pointed out Petitioner because Gonzales' father had identified Petitioner. Petitioner was not allowed to see the tape.  (<u>Id.</u> at 6-7.)  However, the interview was never transcribed or provided in discovery, and that omission was used to impeach the testimony of the investigator at trial concerning the interview.  (<u>Id.</u> at 7-8.)

The prosecutor destroyed exculpatory evidence in the form of a broken beer bottle, which could have been tested for DNA.  (<u>Id.</u> at 6.)

Petitioner had a very noticeable tattoo of "BPN" on his right

22

shoulder that would have been visible when Petitioner wore a "wife beater."  (Id.)

Petitioner alleges that he told his counsel about his alibi witnesses, Cecelia and Susan Maldonado, who had provided notarized affidavits that Petitioner presented to the trial court with his motion for a new trial.  Cecelia declared on August 14, 2008, that from the afternoon of August 12 until 11:00 a.m. of August 13, 2007, she and Petitioner were together the entire time in Visalia, California.  (Doc. 20 at 31.)  She declared on May 6, 2008, that she was never contacted by or on behalf of Petitioner's trial counsel.  (Id. at 32.)  Susan Maldonado declared that a Thunderbird vehicle, a type of car that the victim saw carrying the perpetrators, was in her possession and control on August 13, 2007; she mentioned this repeatedly to Petitioner's trial counsel.  (Id. at 33.)  Petitioner states that substitute counsel appointed to cover the new trial motion failed to tell Petitioner that on the day of the new trial motion, Cecelia suddenly was unable to remember anything, and none of the investigator's reports recorded the failure of memory; Cecelia subsequently informed Petitioner that counsel had directed her to depart.  Had the defense investigator met with Petitioner, Petitioner would have revealed his witnesses.  Trial counsel and appointed substitute counsel rendered ineffective assistance in failing to pursue an alibi defense and to failing to provide evidence to impeach the victim.  (Id. at 10-12.)

                    2.  Analysis

In McQuiggin v. Perkins, 569 U.S. -, 133 S.Ct. 1924, 1931-34 (2013), the Court held that a petitioner who had not shown extraordinary circumstances and reasonable diligence to warrant

23

equitable tolling could nevertheless attempt to qualify for an equitable exception to the statute of limitations set forth in 28 U.S.C. § 2244(d) based on actual innocence as a form of miscarriage of justice.  A petitioner does not meet the threshold requirement of showing actual innocence as an equitable exception to the statute of limitations unless he persuades the district court that new evidence shows that it is more likely than not that no reasonable juror would have convicted the petitioner, that is, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.  Id. at 1935.

The gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error.  Id. at 1936. This is consistent with the rationale underlying the miscarriage of justice exception, namely, ensuring that federal constitutional errors do not result in the incarceration of innocent persons.  Id.

The timing of the petition is a factor bearing on the reliability of the evidence purporting to show actual innocence. Id. at 1934-36.  Where a federal habeas court is faced with a claim of actual innocence as a gateway, unjustifiable delay does not absolutely bar relief, but rather is a factor in determining whether the petitioner has made the requisite showing of actual innocence. A court may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable reliability of the evidence of actual innocence.  Id.

Here, the probative value of the evidence that fellow gang members transported the victim to the hospital is undercut by the

fact that they did so only after the victim in effect informed them that although he was not sure, his attackers looked like Surenos. Thus, in helping the victim, the Norteno gang members could well have been acting to further Norteno gang interests.  Further, the victim testified at trial, identifying Petitioner as one of the perpetrators.  However, the jury already had before it testimony that the victim had identified his attackers as looking like Surenos; thus, the jury already considered significant impeachment evidence with respect to the victim's identification of Petitioner, yet it determined to accept that the victim's identifications of Petitioner.  The presence of a "BPN" tattoo on Petitioner tended to connect Petitioner to the gang, and thus it is understandable why it would not be accentuated by the defense.

Petitioner's alibi witnesses gave only the most general statements in their declarations.  The declaration of Susan Maldonado actually tended to connect Petitioner, through Susan, to a type of car in which the perpetrators were observed riding.  Counsel explained that the helpful witnesses were presented at the motion for a new trial, and that Cecelia expressed a complete failure of recollection just before she was to testify at the motion for new trial.  Considering these circumstances, even if Petitioner's evidence were considered to be new evidence, it was not of a sort that shows that it is more likely than not that no reasonable juror would have voted to find Petitioner guilty beyond a reasonable doubt.  The evidence was not so strong that the Court cannot have confidence in the outcome of the trial.

The Court concludes that Petitioner has not established actual innocence as an equitable exception to the statute of limitations.

25

1     In summary, the Court concludes that the petition was untimely

2  filed, and it should be dismissed with prejudice.

3     V.   <u>Certificate of Appealability</u>

4     Unless a circuit justice or judge issues a certificate of

5  appealability, an appeal may not be taken to the Court of Appeals

6  from the final order in a habeas proceeding in which the detention

7  complained of arises out of process issued by a state court.  28

8  U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336

9  (2003).  A district court must issue or deny a certificate of

10 appealability when it enters a final order adverse to the applicant.

11 Rule 11(a) of the Rules Governing Section 2254 Cases.

12     A certificate of appealability may issue only if the applicant

13 makes a substantial showing of the denial of a constitutional right.

14 § 2253(c)(2).  Under this standard, a petitioner must show that

15 reasonable jurists could debate whether the petition should have

16 been resolved in a different manner or that the issues presented

17 were adequate to deserve encouragement to proceed further.  <u>Miller-</u>

18 <u>El v. Cockrell</u>, 537 U.S. at 336 (quoting <u>Slack v. McDaniel</u>, 529 U.S.

19 473, 484 (2000)).  A certificate should issue if the Petitioner

20 shows that jurists of reason would find it debatable whether: (1)

21 the petition states a valid claim of the denial of a constitutional

22 right, and (2) the district court was correct in any procedural

23 ruling.  <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000).

24     In determining this issue, a court conducts an overview of the

25 claims in the habeas petition, generally assesses their merits, and

26 determines whether the resolution was debatable among jurists of

27 reason or wrong.  <u>Id.</u>  An applicant must show more than an absence

28 of frivolity or the existence of mere good faith; however, the

applicant need not show that the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the motion should have been resolved in a different manner. Petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, the Court should decline to issue a certificate of appealability.

VI.   Recommendations

In accordance with the foregoing, it is RECOMMENDED that:

1) Respondent's motion to dismiss the first amended petition be GRANTED; and

2) The first amended petition for writ of habeas corpus be DISMISSED with prejudice; and

3) Judgment be ENTERED for Respondent; and

4) The Court DECLINE to issue a certificate of appealabilty.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

The parties are advised that failure to file objections within the specified time may "waive their right to challenge the magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

    Dated:   __**January 27, 2015**__          ____ /s/ *Barbara A. McAuliffe* ____
                                           UNITED STATES MAGISTRATE JUDGE